**IN THE COURT OF APPEALS OF IOWA**

No. 13-1869
Filed August 13, 2014

**RYAN COMPANIES and ZURICH
NORTH AMERICA,**
    Petitioners-Appellants/Cross-Appellees,

**vs.**

**GREG BISSELL,**
    Respondent-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Karen A. Romano,
Judge.

An employer appeals and an employee cross-appeals from a district court
ruling upholding a workers' compensation award. **AFFIRMED.**

Sasha L. Monthei of Sheldrup, Blades, Schrock, Smith, and Aranza, P.C.,
Cedar Rapids, for appellants.

Jean Mauss of Schott, Mauss & Associates, P.L.L.C., Des Moines, for
appellee.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

Employer Ryan Companies appeals from an adverse ruling by the district court on its petition for judicial review from an award of workers' compensation benefits. The Iowa Workers' Compensation Commissioner found carpenter Greg Bissell injured his lower back in the course of his employment, Ryan had notice, and Bissell lost one-hundred percent of his earning capacity as a result of the injury. For the same reasons detailed in the thorough district court opinion, we affirm the commissioner's decision.

**I.      Background Facts and Proceedings**

To frame the legal issues on appeal, we provide the following summary of pertinent facts. For those facts in dispute, we rely on the deputy commissioner's findings, as he had the opportunity to assess witness credibility at the in-person hearing. *Arndt v. City of Le Claire*, 728 N.W.2d 389, 395 (Iowa 2007).

Although his education was in accounting and psychology, Greg Bissell pursued a career in the construction industry. He began working as a journeyman carpenter for Ryan Companies on October 22, 2008. On October 23, 2008, Bissell—then forty-seven years old—was lifting a heavy panel of glass when his back "popped." After the injury, Bissell could not stand up straight and relied on a co-worker to help him remove his tool belt and walk from the building. A Ryan foreman, John Popson, asked if he needed an ambulance, but Bissell declined—believing he aggravated a preexisting back problem.

Bissell tried to drive home, but experienced car trouble so his daughter picked him up, leaving his tools at the site. She testified her father was in a great

deal of discomfort, and it was unusual for him to leave his tools at the work site. When Bissell arrived home, his wife insisted he seek medical treatment that evening. They went to the emergency room at Mercy Medical Center. The hospital intake notes report Bissell was experiencing significant back pain.[1] "Lumbar area shoots pain down side of thigh and lower leg. Has had this pain before just not this bad . . ., [s]tood up straight then almost fell to side as if right leg gave out."

Bissell called into work the next day to report his absence. The receptionist said he did not need to make daily calls, but should contact the company when he was well enough to return. Bissell returned to the job site a few days later on crutches to retrieve his tools and collect his paycheck. Popson recalled seeing Bissell having physical difficulties that day, but testified Bissell did not report his injury.

Bissell admits he did not make an official report of his injury to Ryan. He testified he did not think his treatment was covered under workers' compensation insurance. Bissell believed because his physical difficulty following the October 2008 lifting incident was not his first experience with pain in his lower back and legs, the injury could not be compensated. Bissell had previously received treatment for restless leg syndrome, a displaced lumbar disk, and degenerative disk disease. Bissell's pain management specialist, Dr. Dan Baldi, noted after a

---

[1] The emergency room notes suggested Bissell reported the back pain had been ongoing for four days, a fact Bissell denied. The deputy found Bissell credible on this point.

June 2008 consultation that Bissell's medications were working well to control his pain level.

Starting in October 2008, Bissell's physical condition deteriorated dramatically. On October 24, he visited both Mercy Clinic's Arthritis and Osteoporosis Center and Dr. Baldi's office—reporting severe lower back pain. He received lumbar facet injections on October 27, but did not gain much relief. Bissell suffered increased pain and decreased strength over the next two years. Bissell could not move about without a cane or crutches, and eventually started using a wheelchair. Bissell also suffered "emotional fallout from his physical disability" and began seeing a counselor who diagnosed him with mood disorder and chronic adjustment disorder with depression and anxiety.

Bissell did not realize he had a compensable work injury until he consulted with an attorney in March 2010 for the purpose of applying for social security disability benefits. As part of his claim for social security benefits, Bissell underwent a functional capacity examination by Dr. Tracey Larrison. Dr. Larrison concluded Bissell would "not be able to adequately sustain a 40 hour work week of any kind." Dr. Baldi also opined sitting for periods of time at a sedentary job would be difficult for Bissell.

On October 14, 2010, Bissell filed his petition with the workers' compensation commissioner. Ryan engaged Dr. William Boulden to perform an independent medical examination of Bissell. After viewing a 2008 MRI of Bissell's spine, and comparing those results to a 2006 MRI, Dr. Boulden determined the October 23 injury was a new herniated disc, not an aggravation

of a previous condition. Dr. Mitch Erickson, a neurologist, came to the same conclusion.

Ryan hired Dr. Chad Abernathey in October 2011 to review Bissell's records. Without examining Bissell, Dr. Abernathey opined Bissell's chronic low back pain was not related to his work at Ryan, but rather his symptoms were "compatible with [a] long standing pre-existing" condition.

A deputy workers' compensation commissioner held an evidentiary hearing on Bissell's petition on January 4, 2012. In an arbitration decision issued February 6, 2012, the deputy found Bissell suffered a new injury during the scope of his employment on October 23, 2008. The deputy placed greater weight on Bissell's testimony and his medical evidence than on the evidence presented on Ryan's behalf. The deputy also decided Ryan had actual notice of Bissell's injury. Alternatively, the deputy decided the discovery rule applied to Bissell's situation. Finally, the deputy determined the injury resulted in a total loss of earning capacity for Bissell and awarded the worker $682.19 a week in disability compensation and $1875.74 in medical expenses.

Ryan appealed the decision to the commissioner, who affirmed and adopted the arbitration decision in its entirety on March 28, 2013. Ryan then asked for judicial review. On judicial review, Ryan argued (1) the agency erred in finding Bissell sustained an injury to his lower back arising out of and in the course of his employment; (2) Bissell's claim was barred for failure to provide Ryan notice; and (3) if Bissell's injury was compensable, he did not suffer a total

loss of earning capacity. The district court affirmed the agency's action. Ryan appeals.[2]

## II. Scope and Standards of Review

In the judicial review proceedings, the district court acts in an appellate capacity reviewing the commissioner's decision to correct legal error. *Mike Brooks, Inc. v. House*, 843 N.W.2d 885, 888 (Iowa 2014). On appeal, we apply the standards of Iowa Code chapter 17A (2013) to decide if we reach the same conclusion as the district court did. *Id.* at 889.

Whether Bissell's injury was work related, whether the employer had actual notice of the injury, and whether Bissell was permanently and totally disabled are all questions of fact. The legislature vested the commissioner with discretion to make determinations of fact. *Id.* "We are bound by the commissioner's factual determinations if they are supported by substantial evidence in the record before the court when that record is viewed as a whole." *Id.* "'Substantial evidence' is defined as "the quantity and quality of evidence that would be deemed sufficient by a neutral, detached, and reasonable person, to establish the fact at issue when the consequences resulting from the establishment of that fact are understood to be serious and of great importance.'" *Id.* (quoting Iowa Code § 17A.19(10)(f)(1)). Evidence is not insubstantial just because it may support a finding different from that made by the commissioner.

---

[2] Bissell filed a cross-appeal from the district court's rejection of the agency's alternative reliance on the discovery rule. The cross-appeal was not necessary. An appellee may seek affirmance on a ground rejected by the district court as well as a ground which was accepted. *See Hamilton v. City of Urbandale*, 291 N.W.2d 15, 17 (Iowa 1980). We will address Bissell's argument concerning the discovery rule below.

*Id.* Our job is to see if substantial evidence supports the findings actually made. *Id.*

Because Ryan's challenge to the agency's industrial disability determination depends on the application of law to facts, we will not disturb that decision unless it is "irrational, illogical, or wholly unjustifiable." *See Neal v. Annett Holdings, Inc.,* 814 N.W.2d 512, 526 (Iowa 2012).

## III. Assessment of Judicial Review Order

Ryan raises the same three arguments here as before the district court on judicial review. First, the company argues the commissioner erred in finding Bissell sustained an injury to his lower back arising out of and in the course of his employment. Second, Ryan disputes that it had actual notice of Bissell's injury. Third, Ryan contends Bissell did not suffer a permanent total disability.

We find this case does not merit a full opinion to expound on the issues presented. *See* Iowa Ct. R. 21.26(1). The district court identified and measured all of Ryan's claims. *Id.* We approve of the reasons given and conclusions reached in the judicial review order, and opt to summarily explain our rationale as follows.

Ryan accuses the deputy commissioner of "becoming a proponent for Bissell." To the contrary, the deputy commissioner performed his duty, as the trier of fact, to gauge the credibility of witnesses. *See City of Davenport v. Newcomb*, 820 N.W.2d 882, 888 (Iowa Ct. App. 2012). The deputy expressly found Bissell and his family members to be credible based on their demeanor at the hearing. Ryan also claims the "vast majority of medical evidence on this

claim supports a finding that it was Bissell's long history of a chronic low back condition" and not a new injury which caused his pain. As he was free to do, the deputy gave greater weight to the opinions of Drs. Boulden and Erickson than to the opinion provided by Dr. Abernathey. We defer to the commissioner's credibility findings. Accordingly, we find substantial evidence to support the agency's conclusion that Bissell's back injury result from his work for Ryan on October 23, 2008.

Next, Ryan argues Bissell's claim should be barred because he failed to timely notify the company of his injury as required under Iowa Code section 85.23. Specifically, Ryan contends Bissell told company representatives the lifting aggravated his preexisting back problem, rather than informing them of a new injury. The commissioner decided Ryan had actual notice through Bissell's conversation with foreman Popson on the day of the injury and his call to the receptionist to report his absence the next day. The commissioner alternatively found Bissell did not "discover" his injury until he understood it was compensable in May 2011.

The district court accepted the agency's actual notice finding, but rejected the discovery rule's application. We agree on both counts. It is true an employee may provide information to an employer, which would satisfy the actual knowledge notice requirement without at the same time nullifying his right to invoke the discovery rule. *See Dillinger v. Sioux City*, 368 N.W.2d 176, 180 (Iowa 1985). But under the facts of this case, after Bissell felt the "pop" in his back while performing a work activity, he had a duty to investigate the

compensable nature of his ensuing back pain. *See Chapa v. John Deere Ottumwa Works*, 652 N.W.2d 187, 190 (Iowa 2002). As for actual notice, the record supported the agency's conclusion that Ryan officials were alerted to Bissell's injury through his contacts with foreman Popson and his call to the company's receptionist.

Finally, Ryan argues the award of permanent total disability benefits was "unreasonable, arbitrary, capricious, or an abuse of discretion." The assignment of a percentage to a disability is based on numerous factors. *See Simonson v. Snap-On Tools Corp.*, 588 N.W.2d 430, 434 (Iowa 1990). Ultimately, "the focus is not solely on what the worker can and cannot do; the focus is on the ability of the worker to be gainfully employed." *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 157 (Iowa 1996). The district court said it best in its opinion: "The [c]ourt's inquiry is limited to whether substantial evidence supports [the agency]'s conclusion, and the [c]ourt finds that the opinions of Dr. Larrison and Dr. Baldi provided a sufficient basis from which [the agency] could conclude that [Bissell] suffered a 100% loss of earning capacity due to the October 23, 2008 injury."

After a careful review the record, the briefs of the parties, and the district court's well-reasoned ruling, we find substantial evidence supports the agency's award. In applying the deferential standards of review discussed above, we endorse the rationale and results in the judicial review order. Further discussion of the issues would be of no value. Iowa Ct. R. 21.26(1)(b), (d), and (e). Accordingly, like the district court, we affirm the agency's decision.

**AFFIRMED.**